## ILLINOIS LIFE INS. CO. v. ROGERS et al.

No. 7717—Opinion Filed Sept. 26, 1916.

(160 Pac. 56.)

**1. Homestead—Necessity of Occupation.**

A purchase of a homestead within the statutory limits as to quantity and value with the intention in good faith of presently residing on it or residing thereon as soon as some temporary obstacle to such residence can be removed or some necessary preparation for the same can be made, is equivalent to actual occupancy of the residence, and said property is exempt from lien, levy, or forced sale.

**2. Same—Evidence.**

The evidence in this case examined, and the same is held to show that the property in question was not subject to plaintiff's claim, and the judgment of the trial court, sustaining a demurrer thereto is hereby approved.

(Syllabus by Hooker, C.)

Error from District Court, Osage County; R. H. Hudson, Judge.

Action by the Illinois Life Insurance Company against Stephen Rogers and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Joseph D. Mitchell, for plaintiffs in error.

Opinion by HOOKER, C. This is an action instituted by the plaintiff in error against Stephen Rogers and wife, Frances Rogers, to subject certain property to the satisfaction of a judgment and execution held and owned by the plaintiff in error against Frances Rogers. The plaintiff alleges the recovery of said judgment, that the same is still unpaid, and that execution has been issued thereon, which was returned by the sheriff, "No property found," and it is alleged that after the rendition of said judgment, the defendant Frances Rogers bought the property involved here with her own money and caused the same to be conveyed to her husband, Stephen Rogers, for the purpose of defeating the plaintiff in the collection of this debt. The answer of the defendants discloses that the property is owned and occupied by them as a homestead, and that they intended to use and occupy the same as such at the time they purchased it, and as soon after the purchase as they could improve it they moved upon said property, and have used the same from that time until now as a homestead, and it is further contended that the wife was indebted to the husband in a large sum of money, and in order to secure part payment thereof she conveyed said property to her husband. Upon these issues this cause came on for trial in the lower court, and at the conclusion of the plaintiff's evidence the trial court sustained a demurrer to the evidence, and rendered a judgment in favor of the defendants in error, to reverse which an appeal is had to this court.

From an examination of the evidence we are not able to say that the court committed any error to the prejudice of the plaintiff in error in sustaining this demurrer. All of the evidence here shows that the wife was indebted to the husband, and in order to pay a part of said indebtedness she caused said property to be conveyed to him, although it was paid for by her with her own money. The evidence further shows that it was the intention of the parties at the time they purchased this property to occupy the same as a homestead, and that they did move thereon as soon as the property was ready for occupancy.

We are aware that this court, in Laurie v. Crouch, 41 Okla. 589, 139 Pac. 304, has held that the bare intention to create a home on a vacant lot at some future time, unaccompanied with actual occupancy of the lot, is not sufficient foundation upon which to base a claim of homestead exemption against an execution, but it also states that where there is a fixed intention by the owner of a lot to presently occupy it as a home, accompanied with overt acts which clearly manifest such intention, such as setting up buildings or repairing a house thereon for occupancy, followed by actual moving therein, without unreasonable delay, it might have the effect, at least in equity, of impressing the homestead character so as to render the property exempt as against claims arising prior to actual occupancy by the family. In this state a man who is the head of a family has the right to purchase a homestead. In fact, it is his duty to purchase a homestead for his family, and if his fancy or his judgment

leads him to buy a piece of property which needs improving, it would be a harsh rule of law that would deny him the right to improve his property for the convenience of his family.

The facts in this case show that this property was purchased for a homestead, and that immediately after the purchase improvements were made with the fixed intention upon the part of the parties to occupy it as a homestead as soon as the improvements were completed. There was no unreasonable delay. In 21 Cyc. 473, it is said:

"Nevertheless, in some states, a homestead may be created by intention prior to actual occupancy, when it appears that the owner is entitled to the exemption as the head of the family. * * * So also where intended improvements and occupancy are prevented by litigation, or the intended occupation is interrupted by illness in the claimant's family and the intent to occupy is evidenced by some acts tending to show such intent, there may still be a claim of homestead, and such is the case where land is purchased as a residence to be occupied by the claimant as soon as an outstanding tenancy ends, where he subsequently carries out his intention."

In 28 Tex. Civ. App. 123, 66 S. W. 891, Foley v. Holtkamp, it is said;

"A homestead may be created by intention prior to actual occupancy, when it appears that the owner is entitled to the exemption as the head of a family, and that his intention has been manifest by such acts as amount to reasonably sufficient notice of that intention; the purpose of the law being to require such open evidence of this intention as will prevent the use of this right as a shield for fraud. * * * In Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832, it is said: 'The intention thus to appropriate the property shall not only be found in the mind of the party, but should be evidenced by some unmistakable acts, showing an intention to carry out such design, or some sufficient reason should be given why this intention was not demonstrated by such acts.' In this case this general rule is announced: 'From these decisions it is apparent that intention is almost the only thing that may not be dispensed with in some state of case; and it follows that this intention in good faith to occupy is the prime factor in securing the benefits of the exemption. Preparation * * * is but the corroborating witness to the declaration of intention, the safeguard against fraud, and an assurrance of the bona fides of the declared intention of the party.' Justice Brown in the same opinion says further: 'But the placing upon the premises unhewn logs for the purpose of erecting thereon the humblest cabin, with a bona fide intention to occupy as soon as the cabin can be built, secures the right.' Questions of this sort most frequently arise where the claimant has bought unimproved property for the purpose of a home. In such case the declared purpose for which the property was bought is necessarily a potent factor in establishing the exemption. But we can perceive no difference in principle between such a case and this. Here, while it is true the vacant property was acquired years before the controversy arose, and at a time when appellee, being unmarried, was not entitled to the exemption, yet, after all, it is not the purchase for the purpose which secures the exemption, but the intention formed at a time when the party has a right to the exemption, and evidenced by the requisite acts. The absence of these acts of preparation, or a failure to promptly follow them by occupancy and use, may be accounted for; and, in measuring the reasonableness of the excuse, all the circumstances may be looked to by the jury. The presence of legal obstacles forbidding occupancy or further preparation has been held to excuse these otherwise requisite acts, and permits bona fide intention, coupled with declarations, to secure the right."

See Gardner v. Douglass, 64, Tex. 76; Gallagher v. Keller, 87 Tex. 472, 29 S. W. 647; White v. Wadlington, 78 Tex. 159, 14 S. W. 296; Hardin v. Neal, 32 Tex. Civ. App. 335, 74 S. W. 334. In 17 Neb. 368, 22 N. W. 767, in the case of Hanlon v. Pollard, the Supreme Court of Nebraska said:

"A head of a family without a homestead purchasing a piece of property within the homestead limit as to quantity and value, with the bona fide purpose and intention of residing thereon as a permanent homestead, but who is temporarily prevented from occupying the same by reason of the unexpired term of a tenant thereon, existing at the time of such purchase, or other transient cause, and who does enter and reside upon the same within a reasonable time, and without unnecessary delay, and continues to reside thereon, will take the same free of the lien of a judgment existing at the time of such purchase, or which may be rendered previous to the actual occupancy or residing on such homestead."

Under a liberal construction of the homestead law—and it must be conceded that this law should be liberally construed in favor of the people for whose protection it was enacted—it must be held that a purchase of a piece of land within the statutory limits as to quantity and value with intention in good faith of presently residing on it, or residing on it as soon as some temporary obstacle to such residence can be removed or some necessary preparation for the same can be made, is equivalent to actual occupancy of the residence, and said property is exempt from lien, levy, or forced sale. In the above view we have but followed the law as expressed by the Supreme Court of Kansas, Iowa, New Hampshire, Kentucky, and Illinois. See Edwards v. Fry, 9 Kan.

417; Monroe v. May, 9 Kan. 466; Gilworth v. Cody, 21 Kan. 702.

We are therefore of the opinion that the trial court did not commit any error in sustaining a demurrer to this evidence, and the judgment of the lower court is affirmed.

By the Court: It is so ordered.