## TROWER, Adm'r, et al. v. WETMORE.

No. 16800—Opinion Filed Sept. 21, 1926.

Rehearing Denied Jan. 18, 1927.

1. **Homestead—Abandonment by Divorce Where no Children.**

Where a husband and wife, without minor children, occupy certain premises as a home for a number of years, title being in the husband, and the wife thereafter leaves the home and husband and obtains a decree of divorce, such divorce operates as an abandonment of the homestead right in such property.

2. **Same—Homestead Character not Revived by Remarriage.**

The fact that the husband and wife a year or two later remarry in another county does not operate to reimpress the homestead character on the property, the new family established by the remarriage never having occupied the premises as a home nor by overt acts evidenced any such intention, but continuing for five or six years to live elsewhere until the husband's death.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Wagoner County; O. H. Searcy, Judge.

Action by D. L. Wetmore against H. H. Trower, administrator, and Henry Secrest to .enjoin the sale of certain real estate. From a decree granting a permanent injunction, the defendants bring error. Decree vacated, and cause remanded, with directions.

The premises in controversy in this action comprise lots 1 and 2, block 25, in the town of Coweta, together with the improvements situated thereon, consisting of a five-

room dwelling house and outbuildings. This property was originally purchased by Wm. Gottman in 1903, and it is inferable from the record that he occupied the same as a home from that time until about 1918. It appears that on account of ill health, and also for financial reasons, Wm. Gottman, about March, 1918, removed from these premises in Wagoner county, and went to McCurtain county, where he purchased a farm. The premises in controversy were left in charge of C. W. Walcott, a real estate man in Coweta, for rental purposes. After purchasing the farm in McCurtain county Gottman and his wife resided there for two or three years, after which they removed to Atoka, where they operated a rooming house for an uncertain period, presumably about two years. From Atoka these parties went to Henryetta, where they also operated a rooming house until the death of Wm. Gottman on December 9, 1922. In February, 1923, the widow, Susie Gottman, on her own application, was appointed administratrix of the estate of her deceased husband in Okmulgee county, and thereafter filed an inventory on March 20, 1922, in which she listed the premises in controversy as a part of the estate, and the same was appraised at $900. On the same day that she filed her inventory as administratrix, she purported to convey by warranty deed, as the sole heir of Wm. Gottman, the property here in controversy to D. L. Wetmore for a consideration of $900. In May, 1923, Susie Gottman remarried, and became the wife of one Petropakis. On June 28, 1923, she approved for allowance the claim of Henry Secrest against the estate of Wm. Gottman in the sum of $1,140, being the amount unpaid on a judgment against Wm. Gottman, together with costs accrued in the sum of $87.75, and her approval and allowance of this claim as administratrix was presented to and approved by the county judge of Okmulgee county July 5, 1923. Thereafter, at some date not definitely disclosed by the record, Susie Gottman resigned, and was discharged as administratrix, and H. H. Trower was appointed. Thereupon Henry Secrest, the principal creditor of the estate, filed his petition in the county court of Okmulgee county for an order of sale of real estate for the payment of debts outstanding against said estate. Upon hearing had upon this petition an order of sale was entered, and it was to enjoin the sale of the property here in controversy under this order of sale that the instant injunction proceeding was commenced.

On December 4, 1924, a trial was had, resulting in a decree in favor of plaintiff and against the defendants, perpetually enjoining them from selling or attempting to sell the above described premises, and forever barring them from setting up or asserting any right, title, interest, or estate in said premises adverse to the plaintiff, D. L. Wetmore. After unsuccessful motion for new trial, the case has been brought here by petition in error, with case-made attached for review.

Watts & Broaddus, for plaintiffs in error.

Kirby & Markley and W. O. Rittenhouse, for defendant in error.

Opinion by LOGSDON, C. Both parties in their briefs state:

"The question for decision is whether or not the property was the homestead of William Gottman and his wife, Susie Gottman, at the time of his death."

This agreement of the parties as to the determinative issue involved in this proceeding renders unnecessary a consideration of the assignments of error seriatim.

A careful reading of the testimony preserved in the record of the trial discloses that, some eight or ten years prior to the trial, marital troubles arose between Gottman and his wife, resulting in her obtaining a divorce, and in her removal to the home of her daughter at Idabel, in McCurtain county. At one place in her testimony she stated that she obtained the divorce in Wagoner county before leaving Coweta for Idabel. At another place she testified that the divorce was obtained in McCurtain county, after her removal to her daughter's. There were no minor children.

Regardless of which statement is correct concerning the forum of the divorce proceeding, it is indubitable that during the remaining months or years after the divorce, during which Gottman occupied the premises in controversy, his occupancy was that of a single man and not as head of a family. The decree of divorce operated as an abandonment of the homestead, and withdrew from him the benefits of the homestead exemption laws of the state (Const., art. 12; Comp. Stat. 1921, section 6595); conferring upon him merely the exemptions of a single man. (Comp. Stat. 1921, section 6599.) He could at any time thereafter convey or mortgage the premises in controversy without the consent of his former wife. Goldsborough et al. v. Hewitt, 23 Okla. 66, 99 Pac. 907.

It is undisputed that Gottman left the

premises in controversy March 22, 1918. The tenant who rented the premises from Gottman, and to whom Gottman delivered possession, fixed the date of his entry positively. He further testified:

"A. He told me he was leaving. Q. Tell the court substantially what the—what he said? A. He told me he was leaving Coweta and hunting a better place, and I asked him if he was coming back sometime, and he said, 'No, I am going away for good.' Q. Did he ever come back after that? A. Twice after that for a short time. Q. Did he ever live in this place after that? A. No. sir. Q. Did he say anything about coming back on a visit? A. No, he told me he would probably come back on a visit sometime, he might come back on a visit. Q. Leaving for good? A. Yes, sir. Q. Do you know Mr. Gottman,—did you know him when he lived at Coweta? A. Yes, sir. Q. You know when he left there? A. Well, I believe in 1918 when he left there at that time. Q. His family, anybody else besides himself? A. No, just himself. Q. Do you know his wife? A. Yes, sir. Q. When did you see her prior, there, prior to that time, the time you moved in the house? A. It had been a year or more before that. Q. Where was that? A. There at the place. Q. Has she been back since then? A. .Not that I know of."

It is further disclosed by the testimony of this witness that he paid the rent to Charlie Walcott by direction of Gottman. Walcott testified:

"Q. Was there any interruption in your collection of the rents? No, sir. Q. Did they remain away all the time? A. Never was back there to live after they put it in my hands. Q. You continued to collect the rents from that time on? A. Until he died. Q. You are quite positive of that? A. Yes, sir."

After Gottman rented the premises to Brassear, and told him he was leaving for good, he went to McCurtain county. At some uncertain date thereafter he and Mrs. Gottman became reconciled and were remarried at Hugo. The new family thus created never at any time occupied the premises in controversy as a home.

Plaintiff, testifying in his own behalf, stated that he had lived in Coweta eight or ten years preceding the trial; that he had known William Gottman about a year before he moved away; "got well acquainted with him"; that Gottman lived on the premises in controversy up to the time he moved away; that he knew of no one living with him; that he never knew Mrs. Gottman until he took the deed from her; that if

Gottman ever lived in Coweta after moving away he never knew it.

It is clearly evident from the testimony of Brassear, Walcott, and the plaintiff that the homestead character was never impressed upon this property by actual occupancy after the family created by the second marriage of Gottman was established. This being town property, actual occupancy is necessary to impress upon it the homestead character (Const., art. 12, sec. 1; · Comp. Stat. 1921, section 6597), or there must exist an intention to make it a home for the family evidenced by overt acts of preparation for a reasonably delayed occupancy. Kelly v. Mosby, 34 Okla. 218. 124 Pac. 984; Laurie v. Crouch, 41 Okla. 589, 139 Pac. 304; Watson v. Manning, 56 Okla. 295, 155 Pac. 184; Illinois Ins. Co. v. Rogers, 61 Okla. 43, 160 Pac. 56. Bouse et al. v. Stone et al., 65 Okla. 5, 162 Pac. 479; Foster et al. v. Vickery et al., 111 Okla. 231, 239 Pac. 141. During the five or six years intervening between the remarriage of these people and the death of Gottman, they never occupied these premises as a home, nor was any overt act performed evidencing an intention on the part of William Gottman to make of it such a home. One or the other was necessary. This court, in the case of Tiger et al. v. Ward et al., 60 Okla. 36, 158 Pac. 941, in the second paragraph of the syllabus, said:

"Where husband and wife are living together, and the homestead status of the land in question has never been established, the wife has no power without the direction or consent of the husband to impress his lands with the homestead character."

There being no homestead character impressed on this property at the date of William Gottman's death, his widow took only as heir subject to the right of the administrator to dispose of it under orders of the court for the payment of debts of the estate. ( Comp. Stat. 1921, secs. 11300, 11318, 1256, and 1354.) Plaintiff took no greater rights under his deed than his grantor had, nor is he commended to the equitable consideration of a court as a victim of undisclosed facts. He and Mrs. Gottman both testified that she told him her deceased husband's estate was being administered by the county court of Okmulgee county, and that she had qualified and was acting as administratrix. He is charged with presumptive full knowledge that, under the law, she could not convey, as an individual, assets of the estate of which she was administratrix free from the claims of the estate's creditors.

For the reasons herein stated, the order and decree of the trial court are clearly against the weight of the evidence and contrary to law. The decree of the trial court is therefore vacated, and this cause is remanded, with directions to the trial court to dismiss plaintiff's action for want of equity.

By the Court: It is so ordered.

Note.—See under (1) 29 C. J. p. 934, §346; anno. 23 L. R. A. 239; 16 L. R. A. (N. S.) 114; L. R. A. 1917C, 371; 13 R. C. L. p. 679; 3 R. C. L. Supp. p. 72; 4 R. C. L. Supp. p. 826. (2) 29 C. J. p. 802, §48; p. 805, §50.