**In re Ivan Lewellyn LANDRY, Debtor.**

**Bankruptcy No. 95–11279–BH.**

United States Bankruptcy Court,
W.D. Oklahoma.

July 5, 1995.

Kenneth L. Spears, Trustee, Oklahoma City, OK.

Tom J. Wilcox, Midwest City, OK, for debtor.

## MEMORANDUM OF DECISION AND OR-DER GRANTING THE TRUSTEE'S OBJECTION TO THE DEBTOR'S CLAIM OF HOMESTEAD EXEMP-TION

RICHARD L. BOHANON, Bankruptcy Judge.

The trustee has objected to the debtor's claim of homestead exemption. Since Oklahoma has opted out of the federal exemption scheme the decision turns on application of the state statute.

OKLA.STAT. tit. 31, § 2 (1910) provides for homestead exemptions and says, in pertinent part "... in case said homestead is used for both residence and business purposes, the homestead interests therein shall not exceed in value the sum of Five Thousand Dollars ($5,000.00) ..."[1] The debtor's homestead is located in an urban residential neighborhood and he claims it is exempt from the bankruptcy estate. The trustee argues the debtor uses it both as a residence and business and, consequently, the exemption is limited to $5,000.

The facts show that the debtor resides in his home and uses the attached garage as a shop where he repairs electronic equipment. Work benches and tools are located in the garage and customers bring their items to the debtor which he then repairs for a price. He has carried on these activities for several

---

**1.** The Oklahoma Constitution also deals with exemptions and says in language essentially identical to the statute "... in case said homestead is used for both residence and business purposes, the homestead interest therein shall not exceed in value the sum of five thousand dollars ..." OKLA. CONST. art. XII, § 1. It also provides that "The Legislature may change or amend the terms of this article." OKLA. CONST. art. XII, § 3. The debtor makes no argument concerning the Constitution and, since it can be amended by the legislature, the Constitutional provision would appear to have no different effect than the statute, at least for purposes of this decision.

years and apparently earns about $9,000 per year. On his statement of financial affairs the debtor says he is self employed at the residence address.

■ I have recently written about the rule that federal courts may not vary the language of federal statutes, even though application of the act may bring unwelcome or unfortunate results. If the statute commands a harsh or bad result it is the function and responsibility of the legislators to change it, not the courts. *See In re Horwitz*, 167 B.R. 237 (Bankr.W.D.Okla.1994).

The debtor does not argue that state statutes should be applied differently than federal laws. Additionally, I know of no principle requiring that the rule of statutory interpretation, or application, be different when a federal court is considering a state law.[2]

■ The process then begins with an examination of the statute to determine if it is discreet or absolute. *Id.* at 241. This undertaking quickly reveals that the Oklahoma exemption law does not require or permit a court to exercise any discretion. If the property is used both for residential and business purposes the mandate of the statute is absolute and requires that the exemption be limited.

■ The only issue left to decide is thus whether or not the debtor's activities constitute the conduct of "business." This is not a technical term and, therefore, it is to be used in its ordinary sense. *See In re Brollier*, 165 B.R. 286, 289 (Bankr.W.D.Okla.1994). *See also Yoder v. State Ex Rel. Case*, 776 P.2d 1273, 1275 (Okla.1989) where the Oklahoma court says "[w]henever possible, words used in a statute will be interpreted according to their common, every-day meaning." While it may appear that choosing the correct definition of the term is a discreet function in itself, the bounds are limited. The court's

conscience will not permit it to select a definition which is strained, absurd or out-of-context with the issue of the case.

The standard dictionaries of the English language define the term in many ways. Some of them obviously do not apply in the circumstances of this case. For example, *Webster's Third New International Dictionary of the English Language, Unabridged* (1981) defines "business" as "something felt to be one's particular concern or responsibility" such as "it's none of your business"; "something felt to be one's right," such as "you had no business hitting her"; "something that disables or destroys," such as "that quarterback really got the business. They carried him off on a stretcher"; or "a double cross," such as "he's been giving his partner the business for years."

The *Oxford English Dictionary, Second Edition* (1989) provides definitions like "things proceeding normally in spite of disturbing circumstances," such as "business as usual"; "a company of flies, also of ferrets," such as a business of ferrets; or "to undertake as a self-appointed task," such as "to make it one's business."

Definitions like these obviously have little relevance to the word's use in the exemption statute. There are other definitions, however, that are relevant. *Webster's* alludes to meanings like "commercial or mercantile activity customarily engaged in as means of livelihood and typically involving some independence of judgment and power of decision", such as "the *business* of a printer being generally thought a poor one"; and "a commercial or industrial enterprise", such as "he's in business for himself." In the commercial sense the *Oxford English Dictionary* mentions meanings such as "that about which one is busy"; "a person's official or professional duties as a whole, stated occupation, profession or trade"; "a pursuit or occupa-

---

**2.** The Oklahoma Supreme Court has recently considered issues involving statutory interpretation and succinctly states:

> It is the duty of a court to give effect to legislative acts, not to amend, repeal or circumvent them, and a court is not justified in ignoring the plain words of a statute. Neither the Supreme Court nor a district court may expand the plain wording of a statute by

construction where the legislature has expressed its intention in the statute as enacted. This Court does not sit as a council of revision, empowered to rewrite legislation in accord with its own conception of prudent public policy. (Citations omitted.)

*Toxic Waste Impact Group, Inc. v. Leavitt*, 755 P.2d 626, 630 (Okla.1988).

tion demanding time and attention; a serious employment as distinguished from a pastime"; and "trade, commercial transactions or engagements."

Nothing in either of these sources indicates that the usage or meaning of the word "business" has been significantly changed or modified in the 85 years that have passed since adoption of the Oklahoma statute.

One also might think that in the long period since enactment of the statute the courts would have applied the term in numerous cases. Interestingly, however, such is not the case and there are surprisingly few reported decisions dealing with its meaning. The most recent is *In re Ozey,* 171 B.R. 116 (Bankr.N.D.Okla.1994) which discusses all the other decisions concerning the statute and it would serve no purpose to recite them here.

■ The *Ozey* court alters the state exemption scheme to provide that the business purpose test is severely limited and may not apply depending on many additional, extraneous factors conceived by the court as necessary to achieve a "beneficent purpose." These factors would include consideration of matters such as the nature of the neighborhood where the homestead is located, the nature of the structure, the source of the debtor's income, the portion of the homestead used for business, and whether some portions of the homestead are clearly "business" in character. It reaches this result by declaring the statute to be a "penalty" which must be construed narrowly "to penalize only clear abuse of the basic homestead right." *Id.* at 121. In substance *Ozey* requires that the objecting party prove, with clear and convincing evidence, that the debtor has abused the homestead exemption. This reasoning affords rights and privileges to debtors that are clearly beyond those conferred by the legislature. It is another example of a court declaring a statute contrary to what it perceives to be the best policy and, therefore, of limited or no effect. Such statutory modification is within the exclusive purview of the elected law makers and beyond the power of the judges who may apply and interpret statutes, but may not amend or alter them. *See In re Horwitz, supra.*

■ The statute is as plain as it possibly could be—if the homestead is also used for business the exemption is limited. Granted, the $5,000 exemption was worth substantially more in 1910 than it is today [3] and with the advent of telephones, computers, modems and facsimile equipment the use of homesteads for business purposes may be far more prevalent and substantially different from the conditions considered by the legislators 85 years ago. Regardless, however, a statute's effect is not altered by its age and if the law is to be changed that task is exclusively for the legislature, not the courts. The only task for the courts is to determine whether or not the homestead is also used for business, and judges are not to concern themselves about whether or not that results in some worthwhile or unwelcome consequence or is good or bad policy.

■ With this in mind my duty is only to reexamine the activities the debtor conducted in the homestead and then apply the ordinary meaning of the word "business" to see if those activities constitute using it for business purposes.

The record demonstrates that he received customers who brought their electronic goods to him at the homestead for repair; that he undertook to repair them in the garage attached to the homestead; that he used tools and equipment on the premises; that he was paid for his work; and that he also used the homestead for his residence.

It would be fatuous to hold that these activities did not involve "commercial or mercantile activity customarily engaged in as means of livelihood and typically involving some independence of judgment and power of decision"; that he was not engaged in "a commercial or industrial enterprise"; that he was not about "a pursuit or occupation demanding time and attention"; or that he was not carrying on "trade, commercial transactions or engagements." *See* sources cited

---

3. I notice that the standard indices compiled by the Bureau of Labor Statistics indicate that $5,000 in 1910 would be comparable to almost $85,000 in 1995. This sum would allow debtors to provide an adequate residence for themselves and their dependents.

*supra* pp. 901–02. The result may seem harsh to some (but likely not to the debtor's creditors), but the conclusion that he used his homestead for both residence and business purposes is inescapable.

Accordingly, it is ordered that the trustee's objection to the claim of homestead exemption is granted and the debtor may exempt no more than the statutory $5,000 limit.